Filed 10/12/23  P. v. Liva CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JOSEPH LIVA,<br><br>　　　　Defendant and Appellant. | B325320<br><br>(Los Angeles County<br>　Super. Ct. No. NA007529) |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard M. Goul, Judge.  Affirmed.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Seth P. McCutcheon and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Joseph Liva participated in the armed robbery of a bar during which his accomplice fatally shot one bar patron and injured two others. Defendant pled no contest to one count of first degree murder and was sentenced to 25 years to life. After the passage of Senate Bill 1437 (2017–2018 Reg. Sess.), defendant filed a petition for resentencing pursuant to Penal Code section 1170.95. Former section 1170.95 was subsequently renumbered and recodified as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) For clarity, we refer to former section 1170.95 only by its new designation (section 1172.6).

Defendant appeals from the denial of his resentencing petition, contending there is no substantial evidence supporting his guilt for murder as an accomplice under the law as amended by Senate Bill 1437; the court failed to consider that he was 17 at the time of the murder; the court erred in admitting his testimony before the Board of Parole Hearings; and cumulative error.

Finding no error, we affirm.

### FACTUAL AND PROCEDURAL SUMMARY

In 1991, defendant pled no contest to first degree murder. (Pen. Code, § 187, subd. (a).) Defendant was sentenced to 25 years to life in prison. The court awarded defendant 450 days of presentence custody credits and dismissed the remaining charges.

In 2019, defendant filed, in propria persona, a petition for resentencing pursuant to section 1172.6 alleging he could not now be convicted of felony murder under the law as amended by Senate Bill 1437. The court appointed counsel for defendant and ordered the People to file a response.

2

After the filing of initial briefs by counsel, a hearing was held on January 5, 2021. Defense counsel told the court defendant was 17 years old at the time of the 1991 murder and requested a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. The court granted defense counsel's request to be appointed to represent defendant at a *Franklin* hearing in addition to handling defendant's resentencing petition.

Thereafter, the People conceded defendant had made a prima facie showing under section 1172.6 and was entitled to an evidentiary hearing. The parties filed supplemental briefing. The People submitted exhibits, including copies of the police reports from the 1991 investigation, a copy of the 1991 probation report, and the transcript of defendant's May 21, 2015 hearing before the Board of Parole Hearings. The court scheduled the evidentiary hearing to take place on April 14, 2021, with the *Franklin* hearing to follow.

After several continuances, the hearing was held on April 25, 2022. Defendant was represented by counsel and waived his right to be present.

The prosecution presented two witnesses: Sheri Ann Roberts, a bar patron who witnessed the robbery, and William C. MacLyman, a retired homicide detective with the Long Beach Police Department who investigated the robbery.

Ms. Roberts testified that on the evening of February 12, 1991, she got off work and went to the U.S.S. Someplace Bar in Long Beach. She took a seat at the bar and ordered dinner. Another patron, Shayne Shields, was seated about two feet away from her. From her seat at the corner of the bar, she could see the rear entrance clearly, without any obstructions. She saw defendant and another man come in through the rear door. She

recognized them both from the neighborhood and remembered they had both been in the bar before, asking for change. The man with defendant had something wrapped around his head like a turban and he was holding a handgun. Defendant also had something in his hand but Ms. Roberts could not say whether it was a gun.

The man with the turban fired a shot into the air. Both he and defendant started yelling at everyone to get down on the floor. Defendant grabbed a pool cue, "slammed" it on one of the pool tables and on the bar counter and continued yelling at everyone. The man with the turban "ripped" one patron off a bar stool, threw him to the ground and headed toward the cash register.

Ms. Roberts said defendant "was yelling at people the entire time." Defendant "kind of coordinated all the activity that was going on" while his accomplice collected money from the cash register. Ms. Roberts heard a woman trying to tell defendant that another male patron was trying to get down on the floor and that he did not need to hit him so hard. She heard defendant continue to hit people with the pool cue, with some of them "making sounds of being hurt."

During the commotion, Mr. Shields, the patron who had been sitting near Ms. Roberts, told her to try to move toward the bathroom to hide. Mr. Shields was not completely down on the floor at that point, and the man with the turban turned toward him. After yelling at him again to get down, the man with the turban shot Mr. Shields in the back of the head. The gunman saw that Ms. Roberts was looking at him and pointed the gun at her. She feared he was going to shoot her too, as she crouched further down and put her hands over her head. She heard

4

several more shots. Defendant yelled at the man with the turban to hurry up, telling him it was time to go. Both men continued yelling as they fled out the back door. The whole incident took "just a few minutes."

Mr. Shields died from the gunshot wound to his head. Two other bar patrons received nonfatal gunshot wounds.

About a week after the shooting, Detective MacLyman interviewed defendant while he was in custody at a juvenile facility on an unrelated charge. Defendant was 17 years old at the time. Detective MacLyman advised defendant of his rights. Defendant signed a waiver form acknowledging his rights and agreed to speak with the detective.

Defendant told Detective MacLyman he had been at a party in Long Beach and met up with a friend who he knew by the moniker "Cap." Cap's real name was Faafatai Lulu. Cap asked defendant if he was "down" with pulling a robbery, and defendant said he was. Defendant said "being down with it" meant agreeing to do it. Defendant also told Detective MacLyman that he and Cap had committed a robbery the day before.

Defendant said he and Cap walked a few blocks to the U.S.S. Someplace Bar and entered through the back door. Cap had a shirt wrapped around his head and a handgun, which he fired into the air when they got inside and yelled at everyone to get down. Defendant grabbed a pool cue and hit a patron with it because he did not get down fast enough. Cap fired several more shots. Cap went to the register and collected money, while defendant went through three people's wallets looking for money but did not find anything. Defendant said he and Cap then fled out the back door.

The prosecution offered two exhibits: a diagram of the interior of the bar and the transcript of the 2015 hearing before the Board of Parole Hearings. Defendant objected to the admission of the transcript. Defendant did not present any evidence.

The hearing was resumed on August 31, 2022. After entertaining argument, the court denied defendant's petition, finding there was substantial evidence of defendant's guilt as a major participant in the robbery who acted with reckless disregard for human life.

This appeal followed. We granted defendant's motion to augment the record with a copy of his resentencing petition.

## DISCUSSION

### 1. Standard of Review

We review for substantial evidence a trial court's factual findings at an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). (*People v. Henley* (2022) 85 Cal.App.5th 1003, 1017; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 591, review den. Oct. 12, 2022, S276189 (*Mitchell*); *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985.) In conducting this review, "we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial." (*Mitchell*, at p. 591; accord, *People v. Brooks* (2017) 3 Cal.5th 1, 57.)

### 2. Substantial Evidence Supports the Trial Court's Factual Findings.

Under current law, felony murder liability may be imposed only if one of the following is proven beyond a reasonable doubt, "(1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted,

6

counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life." (Pen. Code, § 189, subd. (e); see also *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

The court here determined defendant remained guilty under current law because he was a major participant in the robbery who acted with reckless indifference to human life. Determining whether a defendant is a major participant who acted with reckless indifference to human life is a fact-intensive inquiry. Courts are guided in their analysis by the Supreme Court decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). "*Banks* elucidated what it means to be a major participant and, to a lesser extent, what it means to act with reckless indifference to human life, while *Clark* further refined the reckless indifference inquiry." (*People v. Strong* (2022) 13 Cal.5th 698, 706–707.)

Relevant considerations for assessing major participant status are: (1) the defendant's role in planning the crime(s), including whether the defendant supplied or used a lethal weapon; (2) the defendant's awareness of the dangers the crime posed or past experience or violent nature of accomplices; (3) presence at the scene, including being in a position to facilitate or prevent the murder or render aid; and (4) the defendant's conduct after the murder. (*Banks*, *supra*, 61 Cal.4th at p. 803.) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question." (*Ibid.*)

The considerations relevant to determining reckless indifference to human life are: (1) the defendant's knowledge of weapons, and use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony; (4) the defendant's knowledge of accomplice's likelihood of killing; and (5) the defendant's efforts to minimize the risks of the violence during the felony. (*Clark, supra*, 63 Cal.4th at pp. 618–622.) As with the major participant considerations, no one factor is necessary or dispositive. The court must make an individualized, fact-intensive inquiry and assess the totality of circumstances. (*In re Scoggins* (2020) 9 Cal.5th 667, 683.)

*Clark* explained there was significant "overlap" in the factors relevant to determining both elements because " '*the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference* to human life.' " (*Clark, supra*, 63 Cal.4th at p. 615, italics added.)

In denying defendant's petition, the court said it found defendant was a principal in the robbery and a "very direct participant." The court acknowledged its consideration of the *Banks* and *Clark* factors and said the "most significant factor" to the court "was the fact that at the entry to the establishment gunshots were fired. It happens quickly. However, at that point this defendant, Mr. Liva, knew that there were guns and knew that they were being fired." The court said defendant nevertheless chose to continue to actively engage in the robbery and assist his accomplice. The court noted defendant could have said "no" to the use of guns, could have fled at that point, or could have sought some form of assistance, but he chose instead "to continue his participation in the takeover robbery."

The court went on to explain that defendant, knowing his accomplice was armed and firing his gun, continued "to direct" the robbery in the words of Ms. Roberts, made no effort to deter his accomplice from shooting multiple patrons, and then fled the scene with him.

Defendant says the court gave undue weight to the firing of shots by his accomplice as they entered the bar and minimized or failed to take into account how quickly everything happened, that defendant did not plan the robbery, or personally use or supply the gun, and that he was not in a position to prevent his accomplice from shooting multiple patrons, which happened suddenly and in rapid succession.

It is not our role to reweigh the evidence considered by the trial court. Our job is to determine whether substantial, credible evidence supports the court's findings, indulging all reasonable inferences in the court's favor. (*Mitchell*, *supra*, 81 Cal.App.5th at p. 591, review den.)

The record here shows that, after having committed a robbery together the day before, defendant and his accomplice met up at a party and decided to commit another robbery. They then walked several blocks to a neighborhood bar, where, according to the testimony of Ms. Roberts, they engaged in coordinated behavior that appeared to be largely directed by defendant. While defendant's accomplice went to the register, defendant yelled and terrorized the bar patrons by hitting them with a pool cue with such force that Ms. Roberts could hear it and the victims' pained responses from her spot crouched in the corner. Once his accomplice started shooting patrons, defendant did not intercede but continued yelling and rifling through

9

several patrons' wallets before yelling to his accomplice to hurry up.  They then fled the scene together.

Defendant's violent participation in the robbery, threatening and hitting patrons with a pool cue while his accomplice collected cash from the register, heightened the risk of violence as it escalated the possibility that someone might panic, resist or attempt to flee.  Defendant continued to pursue the objects of the robbery, rummaging through patrons' wallets even after his accomplice started shooting, rather than try to deescalate the situation or render aid.  The court's findings are supported by substantial evidence.

Defendant contends the court made a material misstatement of fact that undercuts the validity of its findings. Defendant says the court referenced "guns" being fired when the evidence showed that only one gun was used by defendant's accomplice.  The court may have believed there was a possibility more than one gun was used during the robbery based on the testimony of Ms. Roberts who said that defendant "had something in his hand.  I couldn't say if it was a gun or not when he came in."  Whether or not the court believed defendant may have also wielded a gun, the court did not rest its decision on a finding that defendant personally used a gun.

Defendant further argues the court's finding of reckless indifference is flawed because the court failed to consider that he was only 17 at the time of the shooting.  Defendant's contention that the court failed to consider his age is based solely on the court having not expressly mentioned his age in reciting its findings.  Defendant concedes that we ordinarily do not presume error, even from a silent record.  (*In re Julian R.* (2009) 47 Cal.4th 487, 499 [discussing general rule " ' "that a trial court

10

is presumed to have been aware of and followed the applicable law" ' "]; *People v. Jones* (2022) 86 Cal.App.5th 1076, 1092 ["In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence."].)

Defendant says however that the law regarding whether a court must consider age as a factor when determining reckless indifference was not well established at the time of the evidentiary hearing and we should not presume the court took his age into consideration.  Defendant argues remand for a new hearing is warranted to allow the court the opportunity to expressly consider his age and how it impacts the reckless indifference inquiry.

The court received defendant's extensive package of material for the *Franklin* hearing and stated on the record it had read all of the parties' submissions.  The court acknowledged on the record that defendant was 17 at the time of the shooting.  Nothing obliged the court to explain further how it weighed defendant's age in its decision.  There is no basis in this record for us to find the court did not consider that defendant was 17 at the time of the crimes.

3.  **Defendant's Testimony Before the Board of Parole Hearings Was Admissible.**

Defendant says the court prejudicially erred in admitting, over his objection, the 2015 transcript of his hearing before the Board of Parole Hearings.

Numerous courts have concluded that a defendant's prior statements at a parole board hearing are admissible at an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).  (See, e.g., *People v. Duran* (2022)

11

84 Cal.App.5th 920, 924, 927-932, review denied Jan. 11, 2023, S277507; *Mitchell, supra,* 81 Cal.App.5th at pp. 588–590, review den.; *People v. Anderson* (2022) 78 Cal.App.5th 81, 89–93, review den. July 27, 2022, S274826; *People v. Myles* (2021) 69 Cal.App.5th 688, 699, 704–706, review den. Dec. 15, 2021, S271528.)

We see no reason to depart from these well-reasoned decisions or to revisit this court's decision in *Mitchell*. "[I]t is fair and indeed sensible to say a convicted person's own words are pertinent when that person petitions for the benefit of resentencing." (*Mitchell, supra,* 81 Cal.App.5th at p. 590, review den.) We find no error in the court's consideration of defendant's testimony before the Board of Parole Hearings.

Finally, because defendant has not shown any error, we reject defendant's claim of cumulative error.

## DISPOSITION

The order denying defendant and appellant Joseph Liva's petition for resentencing is affirmed.


GRIMES, Acting P. J.


WE CONCUR:



WILEY, J.



VIRAMONTES, J.


12